## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM HORTON, | ) | |
| | ) | |
| **Plaintiff,** | ) | **16 C 741** |
| | ) | |
| v. | ) | **Judge John Z. Lee** |
| | ) | |
| GERARDO GUZMAN, M.D., in his individual | ) | |
| and official capacities, EVARISTO | ) | |
| AGUINALDO, M.D., in his individual and | ) | |
| official capacities, JOHN E. ZARUBA, | ) | |
| in his official capacity as Sheriff of DuPage | ) | |
| County, and DUPAGE COUNTY, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff William Horton is an inmate at the DuPage County Jail who suffers from liver disease, Hepatitis C, and esophageal varices. He brings suit pursuant to 42 U.S.C. § 1983 against Defendants Dr. Gerardo Guzman, Dr. Evaristo Aguinaldo, Sheriff John Zaruba, and DuPage County, alleging deliberate indifference to his medical needs. Defendants have moved to dismiss the claims in Plaintiff's Fourth Amended Complaint. For the reasons set forth below, Guzman and Aguinaldo's motion to dismiss [56] is denied, Zaruba's motion to dismiss [55] is denied, and DuPage County's motion to dismiss [59] is granted in part and denied in part.

## Factual Background[1]

Plaintiff is a detainee at the DuPage County Jail (hereinafter, "the Jail"). 4th Am. Compl.

¶ 3. Defendant Gerardo Guzman is a doctor and serves as the medical director of the Jail. *Id.*

¶ 7. Similarly, Defendant Evaristo Aguinaldo is a doctor who provides medical care at the Jail.

---

[1]     The following facts are taken from Plaintiff's Fourth Amended Complaint and the exhibits attached thereto, and they are accepted as true on review of Defendants' motions to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

*Id.* ¶ 8. Plaintiff is suing Guzman and Aguinaldo in their individual and official capacities. *Id.* ¶¶ 7–8. Defendant John Zaruba is the Sheriff of DuPage County and is being sued in his official capacity. *Id.* ¶¶ 9–10.

On September 22, 2015, before Plaintiff was booked at the Jail, he was evaluated by Dr. Joseph Vicari, a gastroenterologist, who concluded that Plaintiff has cirrhosis secondary to chronic Hepatitis C. *Id.* ¶¶ 12, 14. Vicari also noted that Plaintiff had undergone multiple endoscopies to remedy internal bleeding caused by esophageal varices. *Id.* ¶ 15. Vicari recommended that Plaintiff make an appointment with a liver clinic for a transplant evaluation. *Id.* ¶ 16. He also recommended an additional endoscopy and banding to address the internal bleeding. *Id.* ¶ 17. Furthermore, on November 30, 2015, Vicari instructed Plaintiff to begin taking a drug called Harvoni to treat his Hepatitis C, to obtain another endoscopy with possible additional banding, and to "follow up with Loyola liver clinic" regarding a transplant evaluation. *Id.* ¶ 23.

On December 9, 2015, Plaintiff was booked at the Jail. *Id.* ¶ 12. Soon thereafter, Plaintiff visited Defendants Guzman and Aguinaldo for medical appointments. *Id.* ¶¶ 26, 31. Guzman and Aguinaldo were provided with Vicari's medical reports, which contained all of the medical information described above. *Id.* ¶¶ 27, 29, 31. According to Plaintiff, Guzman told him during an appointment on December 11, 2015, that "Plaintiff 'should get out [of jail] as soon as possible' because the Jail would not pay for the treatment of Plaintiff's liver disease and Hepatitis C." *Id.* ¶ 49. In addition, employees of the DuPage County Sheriff's Office stated on January 15, 2016, that they were not required to provide Harvoni to treat Plaintiff's Hepatitis C because the treatment cost $90,000 and Plaintiff's condition was not life-threatening. *Id.* ¶ 50.

On January 22, 2016, Plaintiff was evaluated by Dr. Scott Cotler of Loyola University Medical Center, who ordered tests to determine whether Plaintiff needed an evaluation for a liver transplant. *Id.* ¶¶ 32–33. On January 25, 2016, Plaintiff was seen again by Vicari, who ordered Plaintiff to begin taking Harvoni "as soon as possible." *Id.* ¶ 34. Plaintiff alleges that, despite their awareness of these recommendations from Cotler and Vicari, Defendants Guzman and Aguinaldo refused to permit Plaintiff to obtain a liver function test or to receive further diagnosis and treatment. *Id.* ¶¶ 39, 56, 67.

In addition, around February 29, 2016, Vicari instructed Guzman to begin treating Plaintiff with Harvoni. *Id.* ¶ 40. On March 21, 2016, Plaintiff again met with Cotler, who recommended that Plaintiff obtain a liver transplant evaluation at the University of Illinois Hospital. *Id.* ¶ 44. Still, however, Defendants continued to refuse to procure Harvoni and also refused to refer Plaintiff for a transplant evaluation anywhere. *Id.* ¶¶ 41, 44.

On July 14, 2016, Plaintiff collapsed and became unconscious at the Jail as a result of his degenerating liver disease. *Id.* ¶ 45. Plaintiff was transported to the Central DuPage Hospital's intensive care unit and placed on a ventilator to assist his breathing. *Id.* Plaintiff alleges that, shortly thereafter, the Jail "furloughed" him until December 5, 2016, so that it would not be responsible for the cost of the medical care that Central DuPage Hospital provided. *Id.* ¶¶ 4, 52.

Based on these allegations, Plaintiff claims that Guzman and Aguinaldo were deliberately indifferent to his serious medical needs. *Id.* ¶¶ 56–77. He also claims that the DuPage County Sheriff's Department, under the control of Zaruba and DuPage County, has a policy and practice of unreasonably denying medical care to detainees based on the cost of such care and without regard to the severity of detainees' medical conditions. *Id.* ¶¶ 47–48. Defendants have moved to dismiss the claims against them pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

**Legal Standard**

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016). Under the federal notice pleading standards, "[a] plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo*, 526 F.3d at 1081 (internal quotation marks omitted); Fed R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[ ] as true all well-pleaded facts alleged, and draw[ ] all possible inference in [the plaintiff's] favor." *Tamayo*, 526 F.3d at 1081.

Additionally, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To have facial plausibility, a claim must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Plausibility, however, "does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

**Analysis**

**I.      Counts I and II: Deliberate Indifference Claims Against Guzman and Aguinaldo**

In Counts I and II of the Fourth Amended Complaint, Plaintiff alleges that Guzman and Aguinaldo acted with deliberate indifference to Plaintiff's medical needs by (1) refusing to provide Plaintiff with Harvoni and treatment of his Hepatitis C, (2) not allowing Plaintiff to

4

receive a liver transplant evaluation, and (3) failing to treat Plaintiff's internal bleeding caused by esophageal varices. 4th Am. Compl. ¶¶ 59–64, 70–75. Guzman and Aguinaldo have moved to dismiss the claims against them, arguing that Plaintiff fails to state a claim because he was provided with continuous reasonable medical treatment and because he actually seeks access to preferred treatment, which he is not constitutionally entitled to receive.[2] Plaintiff responds that Guzman and Aguinaldo knew of, but disregarded, a substantial risk of harm based on a serious medical condition. At this stage, the Court finds that Plaintiff has stated a plausible claim for deliberate indifference.

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Courts have extended this protection to pretrial detainees under the Due Process Clause of the Fourteenth Amendment. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). A plaintiff must meet an objective element and a subjective element to prove a deliberate indifference claim. *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013). To satisfy the objective element, which Defendants have not disputed at this stage, the plaintiff must show that he had a serious medical need. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). To satisfy the subjective element, the plaintiff must show that defendants "were aware of [the plaintiff's] serious medical need and were deliberately indifferent to it." *McGee*, 721 F.3d at 480. This requires showing something more than

---

[2] Guzman and Aguinaldo also argue that Plaintiff has failed to state a claim for medical malpractice under Illinois law. Guzman & Aguinaldo Mot. Dismiss at 6–8, ECF No. 56-1. Plaintiff has not pleaded a claim for medical malpractice, and the Court therefore disregards these arguments.

negligence, but it does not require a plaintiff to prove he was literally ignored. *Roe*, 631 F.3d at 857–58. Instead, it is sufficient to "show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Id.* at 858 (quoting *Greeno*, 414 F.3d at 653).

Here, Plaintiff has plausibly alleged that Guzman and Aguinaldo knew of a substantial risk to Plaintiff's health but disregarded that risk. First, Plaintiff alleges that Guzman and Aguinaldo knew of Plaintiff's serious medical conditions—that is, his liver disease, Hepatitis C, and esophageal varices—because Plaintiff verbally informed them of these conditions and gave them medical reports documenting the conditions. 4th Am. Compl. ¶¶ 26–31. Moreover, Plaintiff alleges that Guzman and Aguinaldo disregarded a risk of harm arising from these conditions by refusing to provide treatment. For example, Plaintiff claims that Guzman and Aguinaldo refused to treat his Hepatitis C, including by disregarding Vicari's order that Plaintiff begin taking Harvoni. *Id.* ¶¶ 60, 71. Plaintiff also alleges that Guzman and Aguinaldo have refused to allow Plaintiff to have a liver transplant evaluation as ordered by Cotler. *Id.* ¶¶ 62, 73. Finally, Plaintiff alleges that Guzman and Aguinaldo refused to treat him for his internal bleeding caused by his esophageal varices. *Id.* ¶¶ 64, 75. Taking these allegations as true, the Court finds that Plaintiff has pleaded sufficient facts to state a claim for deliberate indifference against Guzman and Aguinaldo.[3]

Guzman and Aguinaldo nevertheless contend that Plaintiff has not stated a claim for deliberate indifference based on their failure to provide Harvoni, because Harvoni is expensive

---

[3]     In arguing that Plaintiff's factual allegations are insufficient, Guzman and Aguinaldo devote much of their reply brief to distinguishing the facts at hand from the facts of *Reed v. McBride*, 178 F.3d 849 (7th Cir. 1999), *Greeno v. Daley*, 414 F.3d 645 (7th Cir. 2005), and *Arnett v. Webster*, 658 F.3d 742 (7th Cir. 2011). *See* Guzman & Aguinaldo's Reply at 3–6, ECF No. 68. Each of these cases, however, involved deliberate indifference claims at the summary judgment stage. The parties' discussion of them thus is largely off point.

and Plaintiff is not entitled to the best available treatment. *See* Guzman & Aguinaldo Mot. Dismiss at 5 (citing *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997)). But Plaintiff alleges not only that Guzman and Aguinaldo failed to provide Harvoni, but also that they failed to provide *any* treatment for Plaintiff's Hepatitis C or internal bleeding. 4th Am. Compl. ¶¶ 60, 64, 71, 75. At this juncture, Plaintiff's allegation that he was refused treatment entirely is a sufficient basis to allow his claim to proceed.

Discovery may reveal that some of Plaintiff's treatment was sufficient, that certain treatments were not necessary, or that an effective medication less expensive than Harvoni was available; however, Plaintiff's allegations are sufficient at this stage. *See McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2010) (noting that a more complete examination of the facts may show that treatment was unnecessary, defendant was unaware of the need for more urgent care, or someone else was responsible for the delay in plaintiff's treatment, but that those issues should be explored in discovery, not at the motion to dismiss stage). The facts taken in a light most favorable to Plaintiff state a plausible claim for deliberate indifference, and the Court therefore denies Guzman and Aguinaldo's motion to dismiss Counts I and II.

## II.     Count III: *Monell* Claim Against Zaruba

In Count III, Plaintiff alleges that Zaruba was deliberately indifferent to Plaintiff's medical needs because, as the Sheriff of DuPage County, Zaruba maintained a policy of unreasonably denying medical care to detainees based on the cost of such care and without regard to the severity of a given medical condition. Zaruba has moved to dismiss this claim, arguing that Plaintiff has not sufficiently alleged a widespread practice to state a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

7

Under *Monell*, municipalities, public officials, and policymaking individuals can be held liable in their official capacities pursuant to § 1983 for constitutional deprivations caused by their official policies or customs. *See Monell*, 437 U.S. at 694; *Gayton v. McCoy*, 593 F.3d 610, 621 (7th Cir. 2010). To state a successful *Monell* claim, a plaintiff must allege "the existence of an 'official policy' or other governmental custom" by pointing to "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Teesdale v. City of Chi.*, 690 F.3d 829, 833–34 (7th Cir. 2012).

Here, Plaintiff argues that he has stated a *Monell* claim by alleging a widespread practice that caused constitutional violations. In particular, he states that "the DuPage County Sheriff Department had a policy, custom, and practice of denying necessary medical care to detainees with serious life-threatening medical needs based to an unreasonable degree upon the cost of such medical care, and without regard to the severity of the detainee's medical condition." 4th Am. Compl. ¶ 48. Furthermore, he points to several facts in support of this allegation. For example, he claims that Guzman told him he "'should get out [of jail] as soon as possible' because the DuPage County Jail would not pay for the treatment of Plaintiff's liver disease and Hepatitis C." *Id.* ¶ 49. He also points to an e-mail chain in which employees of the DuPage County Sheriff's Office discussed Plaintiff's request for Harvoni and decided it would not be provided to Plaintiff because of its cost. *Id.* at ¶ 50; *see also id.*, Ex. J. Finally, he alleges that the Jail furloughed him when he was transported to the hospital for emergency services, so that the Jail would not be obligated to pay for his medical care. *Id.* ¶ 52. Taken together, these facts support Plaintiff's claim that the Jail had a *de facto* policy of unduly taking account of financial

8

concerns in making decisions regarding inmates' medical care. Thus, drawing reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has sufficiently alleged a widespread practice giving rise to a *Monell* claim.

Zaruba challenges this claim on the ground that Plaintiff has not offered examples of instances in which the Jail's purported *de facto* policy has affected individuals other than Plaintiff. Zaruba Mot. Dismiss at 5, ECF No. 55.[4] This argument is unavailing. It is true that, in order to state a *Monell* claim based on a widespread custom or practice, a plaintiff must allege "a series of violations," and "proof of isolated acts of misconduct do not suffice." *Palmer v. Marion Cty.*, 327 F.3d 588, 596 (7th Cir. 2003); *see also Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (noting that, to prevail on a *Monell* claim, the plaintiff must make "more than a showing of one or two missteps"). But in some circumstances, a plaintiff may be able to "demonstrate the existence of an official policy or custom by presenting evidence limited to his experience." *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008). Here, not only does Plaintiff allege the existence of a widespread custom or practice, but he points to particular statements made by Defendants that—when construed in Plaintiff's favor—could support his claim. While this alone may be insufficient to survive summary judgment, it is enough at the pleading stage. *See Barwicks v. Dart*, No. 14 C 8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) ("Plaintiff need only *allege* a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists."); *Hare v. Cty. of Kane*, No. 14 C 1851, 2014 WL 7213198, at *3 (N.D. Ill. Dec. 15, 2014) (denying motion to

---

[4]    Zaruba also argues that Plaintiff has failed to state a *Monell* claim based on either an express policy or an injury caused by an official with final policymaking authority. Zaruba Mot. Dismiss at 4–6; Zaruba Reply at 3–6, ECF No. 65. Plaintiff, however, has not claimed that Count III is based on either an express policy or an injury caused by an official with final policymaking authority. The Court therefore need not address these alternative arguments.

dismiss deliberate indifference claim under *Monell* where complaint alleged facts sufficient to put defendant on notice of the nature of the claim, even though plaintiff did not point to specific examples involving other individuals); *Quinn v. Hardy*, No. 11 C 1173, 2013 WL 4836262, at \*4 (N.D. Ill. Sept. 10, 2013) (same).

For these reasons, Plaintiff has sufficiently stated a *Monell* claim. He has alleged the existence of a widespread practice affecting detainees at the Jail and has supported this allegation with examples of instances in which this practice played a role in decisions regarding his medical treatment. Accordingly, Zaruba's motion to dismiss Count III is denied.

## III.    Count IV: *Monell* Claim Against DuPage County

In Count IV, Plaintiff brings substantially the same *Monell* claim against DuPage County that he brings against Zaruba in Count III. Namely, he alleges that DuPage County maintained a policy of denying necessary medical care to detainees with serious medical needs based on the expense of such care and with deliberate indifference to the severity of the detainee's condition. DuPage County has moved to dismiss Count IV, arguing that it does not set policy for the Jail and thus cannot be held liable as a matter of law.[5] This argument is correct.

The Illinois Supreme Court has held that jail policies set by sheriffs "are independent of and unalterable by any governing body." *Moy v. Cty. of Cook*, 640 N.E.2d 926, 929 (Ill. 1994). Accordingly, the Seventh Circuit has recognized that "policies concerning jail operations 'are solely under the supervision' of the Sheriff," and "[t]herefore, Illinois sheriffs have final policymaking authority over jail operations." *DeGenova v. Sheriff of DuPage Cty.*, 209 F.3d

---

[5]    DuPage County also argues that it cannot be liable to Plaintiff on a *respondeat superior* theory. DuPage Mot. Dismiss at 4–5, ECF No. 59. In response, Plaintiff points out that it has not brought any *respondeat superior* claims against DuPage County. Resp. DuPage Mot. Dismiss at 7–8, ECF No. 62. The Court therefore disregards DuPage County's arguments as to this issue.

973, 976 (7th Cir. 2000) (quoting *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989)). In turn, because Illinois counties lack final policymaking authority over county jails, courts have consistently held that an Illinois county cannot be held liable for a *Monell* claim based on policies or procedures implemented at a county jail. *See, e.g.*, *Riley v. Cty. of Cook*, 682 F. Supp. 2d 856, 860 (N.D. Ill. 2010) (dismissing *Monell* claim against Illinois county because, "[c]ontrary to the allegations in Plaintiff's Complaint, it falls within the purview of [the Sheriff's] office, not the County, to implement the policies and procedures within [the county jail]"); *see also Conwell v. Cook Cty.*, No. 12 C 10062, 2015 WL 4973086, at *4 (N.D. Ill. Aug. 18, 2015) (collecting cases dismissing *Monell* claims against counties based on county jail policies and procedures ); *Jacoby v. DuPage Cty.*, No. 12 C 6539, 2013 WL 3233339, at *3 (N.D. Ill. June 26, 2013) (holding that DuPage County "cannot be held liable for any *Monell* claim because the Sheriff, and not the County, has sole control over the policies and practices of the jail"). Thus, DuPage County cannot be held liable for a *Monell* claim based on policies or procedures implemented at the Jail. Count IV is therefore dismissed.

Nevertheless, DuPage County must remain a party to this suit. Under Illinois law, a local public entity must "pay any tort judgment or settlement for compensatory damages . . . for which it or an employee while acting within the scope of his employment is liable." 745 Ill. Comp. Stat. 10/9-102. The Seventh Circuit has therefore held that an Illinois county is a necessary party in any suit seeking damages from an independently elected county officer sued in an official capacity, such as a sheriff. *Carver v. Sheriff of LaSalle Cty.*, 324 F.3d 947, 948 (7th Cir. 2003) ("*Carver II*") (citing Fed. R. Civ. P. 17, 19). In such suits, "counties must be named as parties . . . so that they may veto improvident settlements proposed (at their expense) by the independently elected officers." *Id.* Here, for the reasons explained above, Plaintiff has stated a

claim for damages against Zaruba, the Sheriff of DuPage County, in his official capacity. DuPage County must therefore remain as a named party in this action. *See, e.g.*, *Jacoby*, 2013 WL 3233339, at \*3 (holding that DuPage County, even though it could not be held directly liable, had to remain a named party where plaintiff had asserted viable claims for damages against the sheriff in his official capacity); *see also Conwell*, 2015 WL 4973086, at \*4 (collecting cases where counties could not be held liable for *Monell* claims but nevertheless were retained as necessary parties named in the suit).

DuPage County advances two arguments as to why it should be dismissed as a party to this action, but neither argument has merit. First, DuPage County contends that it should be dismissed because "there is no 'official capacity claim' against the DuPage County Sheriff." DuPage Mot. Dismiss at 6. This argument, however, blatantly ignores allegations to the contrary in Plaintiff's complaint. *See, e.g.*, 4th Am. Compl. ¶¶ 9–10 ("Zaruba . . . is the Sheriff of DuPage County. . . . Plaintiff brings this action against defendant Zaruba in his official capacity.").

Second, DuPage County argues that it should be dismissed because the Illinois Supreme Court's decision in *Carver v. Sheriff of LaSalle County*, 787 N.E.2d 127 (Ill. 2003) ("*Carver I*"), does not require it to be a named party in a suit such as this. In *Carver I*, the Illinois Supreme Court answered a question of state law certified by the Seventh Circuit. *Id.* at 129. In answering the certified question, the court held that "[an Illinois] county is [ ] required to pay a judgment entered against a sheriff's office in an official capacity." *Id.* at 141. DuPage County is correct that *Carver I* did not explicitly address whether an Illinois county must be named as a party in a suit against a sheriff's office. But the Seventh Circuit has squarely held that *Carver I* "implies an additional point of federal law: that a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so

12

on) in an official capacity." *Carver II*, 324 F.3d at 948 (citing Fed. R. Civ. P. 17, 19). The Seventh Circuit's holding is binding on this Court.

In sum, Plaintiff cannot proceed with his *Monell* claim against DuPage County, and Count IV is therefore dismissed. Because Plaintiff has stated a viable claim against Sheriff Zaruba in his official capacity, however, DuPage County must remain in the suit as a named party.

## Conclusion

For the reasons stated herein, Guzman and Aguinaldo's motion to dismiss [56] is denied. Zaruba's motion to dismiss [55] is also denied. DuPage County's motion to dismiss [59] is granted in part and denied in part. To the extent the motion seeks to dismiss Count IV, the motion is granted, and Count IV is dismissed with prejudice. In all other respects, DuPage County's motion is denied. DuPage County must remain named in this suit as a necessary party.

**IT IS SO ORDERED.**                    **ENTERED    4/4/17**

_____
**John Z. Lee**
**United States District Judge**

13